## In re ARKONIA FABRIC MFG. CO.

### (District Court, E. D. Pennsylvania. ·March 6, 1907.)

### No. 2,607.

1. BANKRUPTCY—INSOLVENCY—EVIDENCE.

   Evidence *held* to require a finding that a corporation was insolvent at the time a bill of sale of its machinery, etc., was executed to petitioner.

2. SAME—PREFERENCES.

   A corporation, of which both petitioner and her husband were directors, and which they controlled, being in need of money, petitioner on January 8, 1906, advanced to it $3,000 of the money which she held as trustee for her daughter, and which could not legally be invested in the corporation's securities. Petitioner claimed 'that at this time an agreement was made to' secure the loan by a bill of sale of the corporation's machinery but this was not proved nor was any bill of sale actually executed until July 24, 1906, when the corporation to the knowledge of both petitioner and its other officers was hopelessly insolvent. On September 7, 1906, a petition in bankruptcy was filed against the corporation and an adjudication entered October 5th following. There was no change of possession after the bill of sale was executed except that tags with petitioner's name were attached to the various machines after which the corporation used them under an alleged lease. *Held*, that such bill of sale constituted a preference made within four months prior to the filing of the bankruptcy petition, and was therefore void as against creditors as provided by Bankr. Act July 1, 1898, §§ 67c, 67e, c. 541, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449].

In Bankruptcy.

The following is the opinion of the referee:

This matter comes before me upon the petition of Rebecca E. Crenshaw, trustee for Marian Crenshaw, filed October 23, 1906, and the answer of the trustee in bankruptcy thereto, filed October 24, 1906. From the testimony taken before me and the record offered in evidence, I find the following facts:

The Arkonia Fabric Manufacturing Company is a corporation incorporated under the laws of the state of Michigan on January 26, 1905, by J. F. Sullivan, Joseph C. Sullivan, John N. Annut, Albert Crenshaw, and Rebecca E. Crenshaw. By its articles of incorporation its capital stock is fixed at $25,000; the shares being divided into 250 of the par value of $100 each. In February, 1905, the corporation issued 190 shares, 119 of which were owned by the Crenshaw family, thus giving them a substantial majority of the shares issued. In February, 1906, an additional 25 shares were issued to John Y. Hoag, making the total number of shares issued 215, of which 119 shares held by the Crenshaw family still remained the majority. Albert Crenshaw and Rebecca E. Crenshaw, his wife, were members of the board of directors of the corporation; Albert Crenshaw being also the president thereof. David H. Calhoun, father of Rebecca E. Crenshaw and owner of 28 shares of stock of the corporation, died August 12, 1905, and by his will, probated at Philadelphia, he devised certain real estate to his said daughter in trust for his granddaughter Marian, giving to his said daughter, trustee as aforesaid, power to sell the said real estate and to reinvest the proceeds "in some other security." In pursuance of this power Mrs. Crenshaw sold the real estate about January 1, 1906, realizing therefrom the sum of $3,521.20. At the time of the sale of this real estate the Arkonia Fabric Manufacturing Company was in need of money, and on January 8, 1906, the moneys received by Mrs. Crenshaw from the sale of the real estate were paid into the treasury of the Arkonia Fabric Manufacturing Company. The difficulty that presented itself to Mrs. Crenshaw as trustee for her daughter under the will of David H. Calhoun, was obvious. She was about to invest these trust funds in a security not authorized by the law. Her attorney, Arthur Colville, Esq., since deceased, advised her that she could not legally invest these funds in the business of the corporation or make a loan to it. In her testimony Mrs. Crenshaw adds that her attorney then advised her to make this loan, provided the corporation would give her a bill of sale of its machinery. In view of other testimony in the case, I do not believe that this advice was then given to Mrs. Crenshaw; but if it was given it was not acted on, and not agreed to by the corporation.

The question as to whether an actual agreement was entered into between Mrs. Crenshaw and the corporation on January 8, 1906, when the money was paid over to the corporation, is of great importance in this proceeding. Much light is thrown upon it by the documentary evidence in the case, and I find as a fact that no agreement was made at that time. The money was needed and paid over and the proper method for securing Mrs. Crenshaw as trustee for her daughter was left to the future. The fact that Mr. and Mrs. Crenshaw practically owned or controlled a majority of the stock of the corporation seems to have been their justification for paying this money into the treasury without fixing the terms upon which the payment was made. This seems to have been a matter of considerable discussion between the Crenshaws and the other directors of the corporation. On January 30, 1906, Joseph C. Sullivan, the then treasurer of the corporation, wrote a letter to Mr. Crenshaw in which he states that it was at first agreed that Mrs. Crenshaw's money should be put into the business and that she should take stock for the same; but this being found illegal, Sullivan called on Mr. Colville, the attorney in Philadelphia, for further information as to the legal status of the matter, and thereupon Sullivan suggested that as she could not legally invest the money in the corporation, or make a loan to the corporation direct, that she make a loan of this money to the officers of the corporation, and secure it by the treasury stock as collateral. This plan does not at first seem to have met with Mr. Crenshaw's approval, but was afterward practically acted upon and carried out.

On April 2, 1906, the first annual meeting of the stockholders of the company was held at Detroit. R. E. Crenshaw and Albert Crenshaw were represented at this meeting by proxy, and it was resolved "that this corporation issue to J. C. Sullivan and Albert Crenshaw certificates of stock for 17½ shares —being in all 35 shares of this corporation—in lieu of a bill of sale made by them transferring to the Arkonia Fabric Manufacturing Company 22 broad looms, and all beaming supplies thereto annexed now in the possession of the

Arkonia Fabric Manufacturing Company in their plant at Philadelphia." By this resolution the attempt was apparently made to meet the difficulty arising by reason of the fact that the funds invested by Mrs. Crenshaw were trust funds. The 22 broad looms referred to in this resolution were already in the possession of the company; title to them appears, according to this resolution, to have been in J. C. Sullivan and Albert Crenshaw. Whether title was actually in them, or whether this was a mere fiction agreed to by the directors of the corporation for the purposes of their resolution does not appear from the testimony. By this resolution, whatever may have been the fact, the corporation recognized the title of J. C. Sullivan and Albert Crenshaw, and agreed to accept their bill of sale for these looms, and to issue to them 35 shares of stock in lieu thereof. On the same date, to wit, April 2, 1906, Mr. John N. Anhut, a member of the Detroit bar and a director of this corporation, wrote to Mr. Albert Crenshaw, then living at West Millbury, Mass.; his letter, taken in connection with the resolution of the corporation, explains the situation. The purchase price of the machinery which was installed in the Philadelphia plant was $3,500. This was about the amount paid by Mrs. Crenshaw to the corporation. The two certificates of stock of 17½ shares each, issued to Mr. Sullivan and Mr. Crenshaw, represent an interest of $3,500 in the corporation. These certificates, after having been signed by Mr. Sullivan as treasurer, were forwarded to Mr. Crenshaw, with the request that he sign them and likewise sign a promissory note to the order of Mrs. R. E. Crenshaw, trustee for Marian Crenshaw, for $3,000, and then indorse the same individually as Mr. Sullivan had done, then, also, to indorse the certificate for 17½ shares, whereby Mrs. Crenshaw would have as collateral security for her $3,000, $3,500 worth of stock of the company, the company's note, and Mr. Sullivan and Mr. Crenshaw as personal sureties. According to this letter, Mrs. Crenshaw's payment to the company was not $3,521.20, but $3,000. This may be due to the fact that a portion of the $3,521.20 paid in by her was afterward paid out by the corporation on her account, leaving the net balance due to her of $3,000.

It is admitted that the letter of April 2, 1906, was received by Mr. Crenshaw. Although he signed page 37 of the minute book of the corporation, which is part of the record beginning on page 35, he denies ever having seen page 35 of this record. In the face of the statement appearing in the letter of Mr. Anhut, admittedly received by Mr. Crenshaw, and dated on the same day that the meeting of the corporation took place, Mr. Crenshaw's denial of knowledge of the contents of the record book as of that date is of no avail. Mrs. Crenshaw testified that after the receipt of the two certificates of 17½ shares each, she promptly sent them back. Mr. Crenshaw does not appear to remember whether she returned the certificates or not, nor does Mrs. Crenshaw remember whether she returned them with or without a letter to Mr. Sullivan. It is a fact, however, that the promissory note was signed by Mr. Crenshaw as president, and indorsed by him individually and kept by him. It furthermore is a fact that the certificates of stock were signed by Mr. Crenshaw as president and that one of them, to wit, certificate No. 17, was transferred by him in blank. Both of these certificates appear in the stock certificate book, pasted to their respective stubs, and marked in pencil "Canceled Anhut Sec'y." It thus appears that at some time after April 2, 1906, these certificates were returned, and came into the possession of Mr. Anhut, and were marked by him "canceled." Mrs. Crenshaw alleges that she did this because she had all the while refused to accept stock in the corporation, insisting upon a bill of sale of the machinery. This may be true, but it does not establish the fundamental fact upon which her right, as alleged in her petition of October 23, 1906, is founded, that "it was agreed by and between the said Arkonia Fabric Manufacturing Company and your petitioner, trustee as aforesaid" that the loan should be made, and that, as security for the repayment of the loan, the corporation would execute and deliver a bill of sale of its looms, machinery, office fixtures, and personal property. It is quite obvious that no such agreement was made at that time.

On April 10, 1906, Mr. Crenshaw wrote to Mr. Sullivan, giving, among other things, his understanding of the list of shares outstanding of the corporation and among these he states: "J. C. Sullivan and A. Crenshaw 35

shares." It thus appears that although these certificates had been received a day or two after April 2d, they had not been repudiated on April 10th. On April 11th a letter was written by Mr. Sullivan to Mr. Crenshaw, wherein these shares are referred to as follows: "J. C. S. and A. C. machinery account has secured for R. E. Crenshaw 35 shares." It thus appears that between April 2d and April 10th all parties, were in agreement as to the propriety of the action with regard to the transfer of the 35 shares of stock to secure Mrs. Crenshaw. It seems to me from the above facts, and from other facts in this case, to be referred to hereafter, that the return of the certificates of stock to Mr. Anhut was an afterthought.

If it be assumed as, in my opinion, it must be, that the payment by Mrs. Crenshaw, although intended for the benefit of the corporation, was made in a round-about way, and that the matter was consummated by the resolution of April 2, 1906, it will explain an erasure appearing in the cash book of the corporation, on page 29 thereof, as of the date of January 8, 1906. This entry as it now appears is as follows:

| | | |
|---|---|---|
| Loan to | R. E. Crenshaw | $ 2,000 00 |
| Arkonia | "        " | 1,521 20 |

I am unable to say what the original entry was, but it was probably an entry conforming to the facts, and, when finally it was determined to execute a bill of sale for the benefit of Mrs. Crenshaw, this entry was altered to conform thereto.

In April, 1906, the finances of the corporation were not in good condition. This is shown by a resolution as of the date of April 2, 1906, whereby the president and treasurer authorized the corporation to assign its book accounts as collateral for money advanced thereon by the Philadelphia Commercial Company of Philadelphia. It appears from the testimony that the company thus designated was, in fact, the Commercial Trust Company of Philadelphia. The testimony shows that the book accounts of the corporation were hypothecated as rapidly as goods were sold. Difficulty was experienced in getting the plant in Philadelphia in proper operation, and it appeared necessary to make changes in the personnel of the board of directors, to give up the office in New York and in Millbury, Mass., and to concentrate the business of the company in Philadelphia. Some time before May 15, 1906, at a meeting held in New York, it was made clear that the business of the corporation was not in good condition. On or about May 24, 1906, Mr. and Mrs. Crenshaw left their home at West Millbury and came to Philadelphia. Creditors began pressing for payment, Mr. Crenshaw contemplated leaving the company and taking another position, the company contemplated changing its name and in fact, according to the testimony of its then secretary, Mr. Hoag, it did adopt the name of Dunblane Mills, and conducted some correspondence under that name, and there was every indication to those who had control of the business of the corporation that it was approaching a condition of insolvency. The condition of the cash book is a significant feature in this connection; no entries appear in it subsequent to April 19, 1906. The schedules in bankruptcy, which were subsequently filed by the corporation, show that on September 7, 1906, the date of the filing of the petition in bankruptcy, the assets consisted of $400 worth of stock in trade, $220 of book accounts and $16 in cash, making a total of $636, with liabilities of $623.43 entitled to priority and $11,470 upon unsecured claims. This condition of hopeless insolvency existed on August 29, 1906, the date when, under proceedings commenced in the court of common pleas, the sheriff went into possession of the premises occupied by the bankrupt, and, according to the testimony, was the same condition that existed on July 24, 1906; this date having been selected for comparison, because it was the date upon which a certain bill of sale was executed by the corporation to Mrs. Crenshaw. Mr. Crenshaw, the president, and Mr. Hoag, the secretary of the corporation, testified that on July 24, 1906, the corporation was solvent, but their cross-examination establishes the fact that there was no change in the value of the assets of the corporation between July 24th and August 29th, except such as might be accounted for by depreciation on account of loss of good will. Mr. Crenshaw testified that excluding the machinery held on lease and excluding the machinery claimed

by Mrs. Crenshaw the corporation's assets on July 24th were worth $15,000 as against liabilities of $14,000. There is no foundation, in fact, for this statement, and all of the testimony points to a contrary conclusion, and I therefore find that on July 24, 1906, the corporation was insolvent and that Albert Crenshaw, its president, and John Y. Hoag, its secretary, knew that it was insolvent at that time.

When the hopelessness of the situation was clear to the parties interested an attempt was made to save a portion of the assets from the impending catastrophe. The money which had been left by Mr. Calhoun to his daughter, in trust for his granddaughter, had been sunk in the business of this corporation, and as the corporation was in practical control of the parents of the cestui que trust, they took such action as they thought best adapted to save some of this property for their daughter; and on July 24, 1906, the corporation, acting by Albert Crenshaw, president, and John Y. Hoag, secretary, executed and delivered a bill of sale to R. E. Crenshaw, trustee for Marian Crenshaw, for the looms, machinery, office fixtures, and all personal property of every kind and description situated on the third floor of 1015 Diamond street, Philadelphia, and made a formal technical delivery of the said assets by marking the same with a small paper tag containing the name of R. E. Crenshaw, trustee. And thereupon, on the same date, Mrs. Crenshaw, as such trustee, demised and leased the same property to the company at a monthly rental of $50; the entire transaction having been concluded without any actual change of possession of the machinery, etc., in question. I have no doubt that this action was taken because of the known condition of insolvency of the company, and the testimony satisfies me, and I find as a fact that both Albert Crenshaw and Rebecca E. Crenshaw had reasonable cause to believe that the corporation was insolvent on that date. They knew that the liabilities were about $14,000, and that, with the exception of the property held by the corporation on lease, and the property sought to be taken by Mrs. Crenshaw, there was practically nothing with which to pay these liabilities. It is true that Mrs. Crenshaw disclaims such knowledge, but notwithstanding her disclaimer, I am forced to the conclusion that her position as a director of the corporation, the fact that her husband was president, her active mind and intelligence, her knowledge that the business of the corporation was bad at the time of the New York meeting, held before May 15th, and her discussions with her husband and Mr. Hoag must necessarily have given her such information and knowledge of the condition of the company as to lead her to the conclusion that it was insolvent, or at least to give her such reasonable notice of its condition as to amount by inference to knowledge of its insolvency. On August 29, 1906, the sheriff took possession of the premises of the Arkonia Fabric Manufacturing Company, and on September 7th a petition in bankruptcy was filed against it. A receiver was appointed with whom the petitioners entered into an agreement that the machinery, etc., claimed by the petitioner should be sold at public sale by the receiver, and the fund held as a special fund to await the determination of the title to the property claimed. The adjudication in bankruptcy was entered October 5, 1906.

I have reached my conclusions as to the facts in this case with some regret. A fund intended for the benefit of a minor child has been lost in what was practically the business of the parents. An attempt is here made to retake from the bankrupt estate a portion of the moneys thus invested in it, but, unfortunately, the rights of creditors have intervened and the equities of the cestui que trust are met by the equities of the creditors.

In view of the foregoing findings of fact, an elaborate discussion of the questions of law submitted to me by counsel is unnecessary. It is contended by counsel for the petitioner that the bill of sale given on July 24, 1906, was not a sale but an assignment of the property described therein as collateral security for the loan made on January 8, 1906, and that the bill of sale was made in pursuance of an agreement made between the petitioner and the corporation on January 8, 1906. If the facts were as alleged, such an agreement might have been enforced under the ruling of the court in Sabin v. Camp (C. C.) 3 Am. Bankr. Rep. 578, 98 Fed. 974, but the facts as found by

me bring the case fairly within the provisions of sections 67c and 67e of the bankruptcy law [U. S. Comp. St. 1901, p. 3449]. The corporation has made a transfer of its property within four months prior to the filing of the petition, at a time when the corporation was insolvent, and when the transferee had reasonable cause to believe that the corporation was insolvent. There was no present consideration for the transfer; the same having been made for the purpose of satisfying a claim of the transferee, which had existed since upwards of six months theretofore. The transfer was made for the purpose of preferring the transferee, and was in fraud of the provisions of the bankruptcy law. The transferee, who is the petitioner in these proceedings, took no title under the bill of sale of July 24, 1906, and therefore has no claim other than as an unsecured creditor against the proceeds of the same.

The petition of R. E. Crenshaw, trustee for Marian Crenshaw, is dismissed.

Joseph Gilfillan, for claimant.
Samuel W. Cooper, for trustee.

J. B. McPHERSON, District Judge. The order of the referee (David W. Amram, Esq.), dismissing the petition of R. E. Crenshaw, trustee, is approved, for the reasons set forth in the opinion of the learned referee.